**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **VICTOR PARKS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BOB BLUM,**<br>**NURSE CASSIDE,**<br>**JOHN BALDWIN,**<br>**JOHN DOE 4,**<br>**JANE DOE 5,**<br>**JOHN/JANE DOES 6,**<br>**NURSE SAVANNAH, and**<br>**JOHN/JANE DOE 8,**<br><br>**Defendants.** | **Case No. 25-cv-01863-SPM** |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Victor Parks, an inmate of the Illinois Department of Corrections (IDOC), filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for constitutional deprivations that occurred at Pinckneyville Correctional Center. The First Amended Complaint is now before the Court for review pursuant to 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, meritless, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE FIRST AMENDED COMPLAINT[1]

Plaintiff alleges that on the morning of December 30, 2024, he was bitten by a brown recluse spider. (Doc. 13, p. 6). He alerted staff that he needed medical attention, and at some point that day, Nurse Casside came to his cell. (*Id.*). Upon seeing Plaintiff's swollen leg, Nurse Casside sent Plaintiff to the health care unit, where he was treated by Bob Blum, a nurse practitioner. (*Id.*). Blum made a cut into Plaintiff's thigh where the wound was located and administered shots of amoxicillin. (*Id.*). Plaintiff alleges that he was prescribed 20 pills of amoxicillin and that medical orders were issued directing that the wound was to be cleaned and repacked once each day by medical staff. (*Id.*).

On January 4, 2025, Plaintiff states he informed correctional staff that he needed to visit the healthcare unit for cleaning and repacking of the wound and was told that the facility was on level one lockdown (Doc. 1, p. 7). A correctional officer then went and telephoned the healthcare unit for instructions on how to proceed with Plaintiff's care. (*Id.*). After phoning the healthcare unit, Plaintiff alleges that the correctional officer informed him that a nurse would be coming to the housing unit. (*Id.*).

Later that day, Correctional Officer John Doe 4 escorted Plaintiff to a small room in the housing unit where treatments are administered and medication is distributed. (Doc. 13, p. 7). Plaintiff describes the room as "very dirty, filthy with dust everywhere." (*Id.*). When he arrived, Nurse Jane Doe 5 had him lay on a dirty table that had boxes on it. (*Id.*). Nurse Jane doe 5 proceeded to remove the old packing from Plaintiff's wound, but in the middle of the process, she

[1] Because Plaintiff has attached grievances as exhibits to his First Amended Complaint, the Court will also review Plaintiff's exhibits and construe the allegations in all of these pleadings together. *See Otis v. Demarasse*, 886 F.3d 639, 644 (7th Cir. 2018); FED. R. CIV. P. 10(c). The Court further notes that to the extent Plaintiff's exhibits contradict statements made in the Complaint, the "exhibit ordinarily controls." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). *See also Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011) (finding that the district court was entitled to rely on exhibits that contradicted the plaintiff's claims in dismissing allegations).

realized that she did not have scissors needed to cut the packing material. (*Id.*). After removing the old packing, Nurse Jane Doe 5 placed gauze on the wound without first cleaning the wound and then left. (*Id.*). According to Plaintiff, Nurse Jane Doe 5 said she would return to clean and properly repack the wound, but she did not. (Doc. 13, p. 8).

The following day, January 5, Plaintiff states that he informed Correctional Officer Cole that he had not received proper wound care the previous day. (Doc. 13, p. 8). Plaintiff was taken to the health care unit, and Nurse Savannah cleaned and repacked Plaintiff's wound. (*Id.*). Nurse Savannah noticed that Plaintiff's wound was deep and becoming infected. (*Id.*). She modified Plaintiff's care instructions so that the wound was to be cleaned and repacked twice a day, instead of once a day. (*Id.*).

On January 7, 2025, Plaintiff states he spoke to Correctional Officer Spencer and informed him that his wound needed cleaned and repacked twice a day. (Doc. 13, p. 9). Correctional Officer Spencer informed Plaintiff that John/Jane Doe 8 did not make a treatment line list for the healthcare unit for that day. (*Id.*). Plaintiff claims that he later learned from Correctional Officer Roadly that because the facility was on a level one lockdown, correctional staff were unsure if medical treatments were canceled for the day. (*Id.*). Correctional Officer Roadly at some point told Plaintiff that a nurse would come to the housing unit to provide him wound care. (*Id.*).

Later, while Correctional Roadly and Nurse Biggs were passing out medications, Plaintiff asked them about his wound care. (Doc. 13, p. 10). According to Plaintiff, Nurse Biggs ignored his question and never came back to the cell house. (*Id.*).

On January 8, 2025, while still on level one lockdown, Plaintiff spoke to a correctional officer about his wound care. (Doc. 13, p. 10). Plaintiff was informed that medical staff would try to treat Plaintiff, but no one came to clean and repack his wound. (*Id.*).

Plaintiff again did not receive wound care on January 15 and January 16, 2025. (Doc. 13, p. 11). Plaintiff was told by Correctional Officer Martin that he would have to clean and repack the wound himself, but Plaintiff was not provided with cleaning or packing materials or instructed on how to do so properly. (*Id.*).

Plaintiff asserts that at some point the wound became infected. (Doc. 13, p. 11). Plaintiff experienced nausea, chills, fatigue, aches, vomiting, and severe pain around the wound area. (*Id.* at p. 10).

## DISCUSSION

Based on the facts alleged, the Court finds that Plaintiff is again asserting an Eighth Amendment deliberate indifference claim against Defendants for failing to adequately treat the spider bite that occurred on December 30, 2024.

The Eighth Amendment prohibits the deliberate indifference to a prisoner's "serious medical needs," as deliberate indifference "constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez*, 577 F.3d at 828 (internal quotations omitted). To successfully state an Eighth Amendment claim for deliberate indifference, a plaintiff must plead facts that would support the inference that the defendant knew of a serious risk of harm and consciously disregarded it. *See Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019). Deliberate indifference is a high bar. "Neither negligence nor even gross negligence is sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless." *Id.* (citing *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991)). Furthermore, when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs, the Court considers the totality of the received medical care. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000).

Even assuming that Plaintiff's spider bite satisfies the objective component of his Eighth Amendment claim, again, the facts do not allow the plausible inference that any of the named Defendants responded to Plaintiff's injury with deliberate indifference.

Nothing about Plaintiff's interactions with Nurse Casside or NP Blum on December 30, 2024, amount to deliberate indifference. Plaintiff asserts that upon seeing Plaintiff's spider bite, Nurse Casside had him taken to the healthcare unit for treatment. (Doc. 13, p. 6). NP Blum then treated the wound with amoxicillin, ordered further antibiotics, and issued instructions for further wound care. Because their actions do not amount to a disregard to an excessive risk to Plaintiff's health, they cannot be liable under the Eighth Amendment.

Nurse Savannah's conduct also does not amount to a constitutional deprivation. When Plaintiff was treated by Nurse Savannah on January 5, 2025, she cleaned and repacked the wound and increased his wound care instructions from once-a-day cleanings to twice-a-day cleanings. (Doc. 13, p. 8). Based on these facts, Nurse Savannah did not provide constitutionally inadequate, and his Eighth Amendment claim against Nurse Savannah is dismissed.

Plaintiff also has not stated a claim against Correctional Officer John Doe 4, who escorted him to the dirty medication room for wound cleaning, or Nurse Jane Doe 5, who allegedly provided improper wound care. At most, this single interaction with these Defendants on January 5, 2025, amounts to gross negligence. *See e.g., Owens v. Duncan*, 788 F. App'x 371, 374 (7th Cir. 2019) (a single interaction with staff at sick call did not amount to deliberate indifference); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) ("isolated instances of neglect … cannot support a finding of deliberate indifference"); *Ehrenberg v. Wisconsin Dep't of Corr.*, No. 10-C-1022, 2010 WL 5089484, at *2 (E.D. Wis. Dec. 7, 2010) (prisoner stated no constitutional claim based on allegations that he was given the wrong dosage of medicine). Notably, when Plaintiff complained

the following day, he was taken to the healthcare unit for treatment. "Thus, the interruption in proper care on January 4 was not a constitutional violation." (Doc. 10, p. 7). *See Gutierrez*, 111 F.3d at 1374 (six-day delay in receiving treatment for infected cyst did not amount to deliberate indifference despite the fact inmate lost substantial amounts of bone from his buttock). The Eighth Amendment claim against John Doe 4 and Nurse Jane Doe 5 is dismissed.

The Court again finds that Plaintiff has not stated a claim against John/Jane Doe 8. Plaintiff describes John/Jane Doe 8 as the individual who failed to place Plaintiff on the list for medical care on January 5, 6, and 7, 2025. (Doc. 13, p. 5). Although Plaintiff alleges that he was left off the treatment list on January 5, 6, and 7, he has not pled facts establishing that being left off the treatment list is what caused inadequate medical care. First, assuming he was left off the treatment list on January 5, he spoke to a correctional officer and was taken to the healthcare unit, where he was treated by Nurse Savannah. Second, neither the statement of facts nor his grievances contain allegations that he did not receive wound care on January 6, despite not being on the treatment list that day. As for the final date he was left off the list, January 7, Plaintiff claims that that he was told that John/Jane Doe 8 did not make a treatment line list that day and that the treatment line maybe canceled because of the lockdown. (Doc. 13, 9). Plaintiff also claims that he was told by Correctional Officer Roadly that a nurse was supposed to come to the cell house to treat Plaintiff, but the nurse never showed. (*Id.* at p. 21). He states that according to staff the reason why he did not receive wound care that day is because the facility had to be on lockdown due to being short staffed. (*Id.* at p. 10). Thus, it is not entirely clear that being left off the list, and not the lockdown itself, was the reason Plaintiff was denied wound care on January 7.

Furthermore, the Court cannot plausibly infer, based on these facts, that John/Jane Doe 8 had the required culpable state of mind, which is akin to criminal recklessness. *Norfleet v. Webster*,

439 F.3d 392, 397 (7th Cir. 2006). There is nothing in the First Amended Complaint suggesting that John/Jane Doe 8 knew of Plaintiff and his condition and then acted with "total unconcern for [Plaintiff's] welfare in the face of serious risks," by failing to include him on the treatment list for three days. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). Thus, Plaintiff's claim against John/Jane Doe 8 is dismissed.

The Court dismisses Plaintiff's Eighth Amendment claim against Warden Baldwin. Plaintiff claims that Warden Baldwin is liable for his constitutional deprivations because Baldwin is responsible for the operations of Pinckneyville, including the safety and sanitation of all buildings. (Doc. 13, p. 3). Plaintiff cannot proceed on this theory of liability against Warden Baldwin. Section 1983 "liability is premised on the wrongdoer's personal responsibility." *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012). Therefore, "an individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Id.* (citations and quotations omitted). The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Plaintiff has failed to offer any facts indicating that Warden Baldwin was personally involved in or even aware of Plaintiff's medical condition and the events alleged in the First Amended complaint.

Plaintiff also sues individuals identified as John/Jane Does 6. (Doc. 13, p. 4). Plaintiff describes John/Jane Does 6 as the correctional officers who were responsible for safety and sanitation of 2 House on January 4, 2025, when he was forced to have his wound cleaned in the unsanitary medication dispensing room. (*Id.*). As stated above, Defendants cannot be held liable under Section 1983 for a constitutional violation simply because they are in supervisory positions. Furthermore, asserting that a group of unknown individuals violated his constitutional rights does

not conform with the federal pleading standards. *See* FED. R. CIV. P. 8; *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement). Thus, his Eighth Amendment claim against John/Jane Does 6 is dismissed.

And finally, Plaintiff lists "Defendant #9," as a defendant but does not assert any allegations against Defendant #9 in the statement of claim. (Doc. 13, p. 5). Defendant #9 appears to be two individuals. He states that Correctional Sergeant and Lieutenant of 2 House, who work the 7 a.m. to 3 p.m. shift, are aware that there is an infestation of spiders and bugs in 2 House, B Wing. (*Id.*). But Plaintiff does not describe any actual conduct on the part of the sergeant or lieutenant, and this statement is too thin and conclusory to support a constitutional claim. *See Twombly,* 550 U.S. at 570; *Brooks*, 578 F.3d at 581 (courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements"). Any claims against Defendant #9 is dismissed.

Not only has Plaintiff failed to state a claim against the individual Defendants, but as the Court previously observed, the overall level of care of Plaintiff's spider bite at worst points to gross negligence rather than deliberate indifference. *See Gutierrez*, 111 F.3d at 1375 (totality of care considered). After he received the spider bite in December, his wound was not properly cleaned and repacked on five occasions (January 4, 7, 8, 15, and 16). These occasional delays "were simply isolated instances of neglect, which taken alone or collectively cannot support a finding of deliberate indifference." *Gutierrez*, 111 F.3d at 1375. The Court cannot plausibly infer that Plaintiff was deprived of a constitutional right based on these few lapses in care.

And finally, the Court notes that Plaintiff names individuals in the statement of claim who are not identified in the case caption, including Nurse Biggs, Correctional Officer Roady, and

Correctional Officer Spencer. The Court will not treat parties not listed in the caption as defendants, and any claims against them are dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

Plaintiff has failed to state a constitutional claim against any named Defendant, and therefore, the First Amended Complaint does not survive screening under 28 U.S.C. § 1915A and shall be dismissed. When a complaint fails to state a claim upon which relief may be granted, the plaintiff is ordinarily given an opportunity to amend the complaint in order to correct the deficiencies. *See* FED. R. CIV. P. 15(a). However, leave to amend need not be granted if it is clear that any amendment would be futile. *See Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021); *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013); *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 970 (7th Cir. 1994). This is Plaintiff's second attempt to state a claim, and he again is unsuccessful. Accordingly, the Court finds that any further amendment of Plaintiff's claims in this action would be futile. The dismissal of this case will be with prejudice and without leave to amend.

## DISPOSITION

For the reasons stated above, the First Amended Complaint (Doc. 13) and this entire action are **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. The Court considers the dismissal of this action as a "strike" under 28 U.S.C. § 1915(g).

Plaintiff may appeal this Order by filing a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If he does choose to appeal, he will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725–26 (7th Cir. 2008);

*Sloan v. Lesza*, 181 F.3d 857, 858–59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. Fed. R. App. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: November 2, 2026**

**STEPHEN P. MCGLYNN**
**United States District Judge**